UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIP PRASOMSY,<br>Petitioner,<br>v.<br>SERGIO ALBARRAN, et al.,<br>Respondents. | Case No. 3:26-cv-09534-JSC<br><br>**ORDER GRANTING APPLICATION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 5 |

Before the Court is Petitioner's *Ex Parte* Motion for Temporary Restraining Order (TRO). (Dkt. No. 5.) On September 3, 2026, Petitioner filed a Petition for Writ of Habeas Corpus and an *Ex Parte* Motion for Temporary Restraining Order (TRO) immediately releasing him from custody, enjoining Respondents from re-detaining him absent prior notice and a pre-deprivation hearing, and enjoining Respondents from removing him to a third country absent procedural protections. (Dkt. Nos. 1, 5.[1]) Upon review of the TRO, the Court ordered a response from the government. (Dkt. No. 8.) Having reviewed the response and reply (Dkt. Nos. 10, 12), and for the following reasons, the TRO is **GRANTED**.

**BACKGROUND**

According to the record before the Court, Petitioner's parents fled Laos to the Philippines and Petitioner was born in a refugee camp in the Philippines in 1982. (Dkt. No. 1 at ¶ 20.) One month later, Petitioner entered the United States with his mother as refugees. (*Id.*) He later adjusted his status to lawful permanent resident (LPR) backdated to the date of his entry. (*Id.*)

In 2002, when Petitioner was 20 years-old he was convicted of second-degree robbery with

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

a firearm enhancement and sentenced to 12 years in prison. (*Id.* at ¶ 22.) Upon his release from prison in 2017, he was detained by Immigration and Customs Enforcement (ICE) under a Notice to Appear charging him with removability under INA § 237(a)(2)(A)(iii) based on a conviction for an aggravated felony. (*Id.* at ¶ 25.) In May 2017, the immigration court sustained the charges, and ordered Petitioner removed to Laos. (*Id.* at ¶ 26.) He did not contest removability or apply for relief. (*Id.*) ICE then wrote to the Consul General of Laos seeking travel documents or a passport for Petitioner.[2] (*Id.* at ¶ 27.) The Embassy of the Lao People's Democratic Republic responded stating they "will only accept Lao citizens for removal if they have a valid and proper document issued by Laos identifying that the individual is a Lao citizen." (*Id.*) Because Petitioner does not have such a document, he "is not recognized by Lao authorities as a Laos citizen or national." (*Id.*; *see* also ¶ 42 ("Laos does not consider refugees, like Petitioner, to be citizens or nationals of Laos"; individuals who have lived outside the country longer than seven years "are treated as stateless upon arrival.").

In June 2017, Petitioner was released on an Order of Supervision because ICE was unable to secure a travel document or remove him to Laos. (*Id.* at ¶ 28.) Petitioner has complied with all his ICE reporting requirements and has had no criminal arrests since his 2017 release. (*Id.*) Petitioner has a U.S. Citizen partner and he has lived with her, her three children, and her parents for the past nine years. (*Id.* at ¶ 30.) Petitioner and his partner also have a 5-year-old U.S. citizen son who has autism and attends therapy four times a week. (*Id.* at ¶ 31.) Petitioner is the primary breadwinner for his family and works as a certified glazier with trade union, IUPAT Local 1621. (*Id.* at ¶ 32.) Petitioner also cares for his elderly disabled U.S. citizen mother. (*Id.* at ¶ 57.)

In March 2026, the Santa Clara County Superior Court granted Petitioner's motion to vacate his 2002 conviction as legally invalid because Petitioner did not "knowingly, intelligently, and voluntarily make the decision to go to trial, in violation of the Due Process Clause in the Fifth and Fourteenth Amendments of the United States Constitution." (*Id.* at ¶ 52.) In May 2026, Petitioner filed a motion to reopen with the Immigration Court based on the vacatur of the

[2] Petitioner has never had a birth certificate, passport, ID document, or any other document issued by the government of Laos. (Dkt. No. 13, Prasomsy Decl. at ¶ 4.)

predicate criminal conviction. (*Id.* at ¶ 53.) The motion to reopen remains pending. (*Id.*)

Three weeks later, Petitioner attended his annual ICE check-in appointment and was given a visa application form from the Lao People's Democratic Republic, and told to return with the completed form on June 25. (*Id.* at ¶ 33.) Petitioner did so and his counsel "attempted to file a Form I-246, Application for Stay of Deportation or Removal for Petitioner with the ICE officer," but the ICE officer "told counsel that **ICE was rejecting the stay application because removal was not imminent**." (*Id.* at ¶ 33 (emphasis in original).) Petitioner was told to return a month later, which he did and was then given a September 3, 2026 return date. (*Id.*)

At his September 3, 2026 ICE appointment, Petitioner was "abruptly re-detained" because Laos had issued a travel document, but they refused to show the travel document to Petitioner or his counsel. (*Id.* at ¶ 34.)

> Furthermore, ICE did not properly conduct an informal interview as required under the regulations. ICE simply showed Petitioner the blank informal interview form. When Counsel asked when was the interview conducted, ICE stated that Petitioner or Counsel could fill out the blank space on the form to provide a statement. Counsel objected that any informal interview had been conducted, and wrote on the form as such. Sun Decl. at Ex. N. Petitioner was not provided with an opportunity to meaningfully respond to the allegations underlying the notice of revocation because he was never shown the purported travel document. After he was re-detained, and after ICE required Counsel to leave, ICE served Petitioner with a Warrant of Removal/Deportation, which was signed by Assistant Field Office Director Lisa M. Bolanos.

(*Id.*)

This Petition was filed later the same day. (Dkt. No. 1.) The Petition was accompanied by a TRO. (Dkt. No. 5.) The Court ordered Respondents to file a response and gave Petitioner the opportunity to file a reply. (Dkt. No. 8.)

## LEGAL STANDARD

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, a party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in

the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (cleaned up) (emphasis in original). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

**DISCUSSION**

Petitioner brings three legal claims: (1) his re-detention without notice violates 8 C.F.R. §§ 241.4(l) and 241.13(i); (2) his re-detention violates his procedural and substantive due process rights under the Fifth Amendment; and (3) his detention violations 8 U.S.C. § 1231(a) and the Fifth Amendment due process clause because his removal is not reasonably foreseeable.

**A. Jurisdiction**

Respondents insist the Court lacks jurisdiction over this Petition because "Courts lack jurisdiction to review a decision to commence or adjudicate removal proceedings or execute removal orders" under 8 U.S.C. § 1252(g). (Dkt. No. 10 at 13.) This "argument is a non-starter." *Saeteun v. Albarran*, No. 26-CV-04743-CRB, 2026 WL 1454304, at *2 (N.D. Cal. May 22, 2026).

Habeas petitions in which petitioners make "statutory and constitutional challenges to post-removal-period detention" are not challenges to the Attorney General's discretion. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *see also Ibarra-Perez v. United States*, 154 F.4th 989, 997 (9th Cir. 2025) ("we have been clear that § 1252(g) does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders"). "Petitioner does not seek

relief from this Court from a decision to execute a removal order ... [and instead] challenges solely the propriety of [her] detention, not the core proceedings involved in [her] removal." *Sipaseuth v. Becerra*, No. 26-CV-07942-BLF, 2026 WL 2521847, at *4 (N.D. Cal. Aug. 26, 2026) (quoting *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *2 (S.D. Cal. Oct. 22, 2025)).

**B. *Winter* Factors**

First, Petitioner has established at least serious legal questions going to the merits of his claim that the government violated its own regulations, 8 C.F.R. § 241.2(l), by failing to provide Petitioner with an opportunity to respond to the reasons for his re-detention at a prompt, informal interview for the reasons stated by other courts in this District addressing similar claims. *See Sipaseuth v. Becerra*, No. 26-CV-07942-BLF, 2026 WL 2521847, at *5 (N.D. Cal. Aug. 26, 2026) (concluding the regulations require "[a] reasonable opportunity to respond to the reasons for revocation"); *Saeteun v. Albarran*, No. 26-CV-04743-CRB, 2026 WL 1454304, at *5 (N.D. Cal. May 22, 2026) (concluding petitioner had demonstrated a likelihood of success on the merits of his claim the government violated its own regulations when he was not provided notice and opportunity to respond to basis for his re-detention or an adequate informal interview).[3]

Second, Petitioner has also raised serious legal questions as to his procedural due process claim. Petitioner has a substantial interest in his continued freedom protected by the Fifth Amendment. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (stating the government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest); *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC,

---

[3] Petitioner also insists Respondents violated the regulation requiring the revocation be done by either an "Executive Associate Commissioner" or "district director," *see* 8 C.F.R. § 241.4(l)(2), because it is undisputed Assistant Field Office Director (AFOD) Bolanos revoked Petitioner's release. Respondents insist the Acting Executive Associate Director delegated revocation authority to AFODs, but do not offer any official statement of delegation beyond Deportation Officer Perez's declaration. (Dkt. No. 11 at ¶ 12.) "[S]everal federal courts ... have held that a failure to adhere to the requirement that an Executive Associate Director or a Field Office Director make the determination to revoke release in compliance with 8 C.F.R. § 241.4 violates due process and thus mandates release" *See Tanashyan v. Mullin*, No. 5:26-CV-04455-SP, 2026 WL 2538250, at *5 (C.D. Cal. Aug. 27, 2026) (cleaned up) (collecting cases). The Court does not reach this issue but orders Respondents to address this issue in its preliminary injunction briefing.

2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025) ("Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest in remaining out of custody."). "Respondents cannot rely on 8 U.S.C. § 1231(a)(6), without any procedural safeguards, as the authority for Petitioner's re-detention after they released him an order of supervision and have been supervising him for [nearly 10 years]." *Edgar Luis M.R. v. Warden*, No. 1:26-CV-04296-TLN-AC, 2026 WL 2149764, at *3 (E.D. Cal. July 27, 2026). Petitioner's release from ICE custody on an order of supervision for nearly 10 years reflects a determination by the government that he was neither a flight risk nor a danger to the community, and Petitioner has a strong interest in remaining at liberty unless he no longer meets those criteria. The remaining *Mathews* factors likewise weigh in Petitioner's favor such that he has demonstrated serious legal questions going to the merits of his procedural due process claim. *See, e.g., Ayurzana v. Lyons*, No. 5:26-CV-02238-KES, 2026 WL 1370140, at *2 (C.D. Cal. May 13, 2026) (applying *Mathews* factors and finding due process violation under similar circumstances); *Edgar Luis M.R.*, 2026 WL 2149764, at *3 (same).

Petitioner has also demonstrated a likelihood of irreparable injury in the absence of temporary relief. Petitioner is the primary caregiver for his autistic son and the primary financial support for his U.S. Citizen partner, her children, and their shared child. (Dkt. No. 1 at ¶¶ 2, 32, 55-57.) Petitioner also suffers from chronic PTSD and his mental health has deteriorated while in custody. (*Id.* at ¶ 54; Dkt. No. 13, Prasomsy Decl. at ¶ 7.) Further, the likely unconstitutional deprivation of liberty that Petitioner faces is an immediate and irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005). "[I]t follows inexorably from [the] conclusion" that Petitioner's detention without a hearing is "likely unconstitutional" that he has "also carried [his] burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

The final two *Winter* factors, the balance of the equities and public interest, also weigh heavily in favor of granting temporary relief. "[T]he public has a strong interest in upholding

procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Meanwhile, the potential harm to the government is minimal. The Government, at most, faces a short delay in detaining Petitioner if it ultimately demonstrates his detention is necessary to prevent danger to the community or flight. *See Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez*, 872 F.3d at 996) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)). The balance of hardships thus tips decidedly in Petitioner's favor.

A TRO immediately releasing Petitioner is appropriate to return him to the status quo. *E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to Petitioner's likely illegal detention. *See Kuzmenko v. Phillips*, No. 25-cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo). Because Petitioner satisfies all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the TRO Motion is granted as detailed below.

Finally, the Court exercises its discretion under Rule 65(c) to dispense with the filing of

bond. "[T]here is no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Therefore, no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

**ORDER**

For the foregoing reasons, IT IS ORDERED that:

(1) Petitioner's application is GRANTED to preserve the status quo pending further briefing and a hearing on this matter.

(2) Respondents are ORDERED to release Petitioner **immediately** from Respondents' custody and ENJOINED AND RESTRAINED from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker. Respondents are PROHIBITED from removing Petitioner from the United States until these proceedings have terminated.

(3) Respondents shall provide a status report confirming Petitioner's release by noon September 9, 2026.

(5) Respondents are ORDERED TO SHOW CAUSE in-person at a hearing on September 21, 2026 at 10:00 a.m. as to why a preliminary injunction should not issue. Respondents SHALL file a response to Petitioner's motion by no later than 2:00 p.m. September 11, 2026. Any reply SHALL be filed by 2:00 p.m. September 16, 2026. Both parties' briefs shall address how, if at all, Petitioner's stateless status impacts his claims.

(6) This Order shall remain in effect until 5:00 p.m. on September 22, 2026 or as otherwise directed by the Court.

**IT IS SO ORDERED.**

Dated: September 8, 2026

Jacqueline Scott Corley

JACQUELINE SCOTT CORLEY
United States District Judge