United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PHILIP PRASOMSY,

Plaintiff,

v.

SERGIO ALBARRAN, et al.,

Defendants.

Case No. 3:26-cv-09534-JSC

**ORDER RE: PRELIMINARY INJUNCTION**

Petitioner Philip Prasomsy filed a habeas petition and a motion for temporary restraining order (TRO), seeking his immediate release from custody, and to enjoin Respondents from re-detaining him absent prior notice and a pre-deprivation hearing and from removing him to a third country absent procedural protections. (Dkt. Nos. 1, 5.[1]) The Court granted the TRO and ordered Respondents to show cause as to why a preliminary injunction should not issue. (Dkt. No. 16.) Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds the motion for a preliminary injunction appropriate for decision without oral argument and VACATES the September 21, 2026 hearing. Having reviewed the parties' submissions, and the relevant legal authority, the Court GRANTS Petitioner's request for a preliminary injunction.

## BACKGROUND

According to the record before the Court, Petitioner's parents fled Laos to the Philippines

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

and Petitioner was born in a refugee camp in the Philippines in 1982. (Dkt. No. 1 at ¶ 20.) One month later, Petitioner entered the United States with his mother as refugees. (*Id.*) He later adjusted his status to lawful permanent resident (LPR) backdated to the date of his entry. (*Id.*)

In 2002, when Petitioner was 20 years-old, he was convicted of second-degree robbery with a firearm enhancement and sentenced to 12 years in prison. (*Id.* at ¶ 22.) Upon his release from prison in 2017, he was detained by Immigration and Customs Enforcement (ICE) under a Notice to Appear charging him with removability under INA § 237(a)(2)(A)(iii) based on a conviction for an aggravated felony. (*Id.* at ¶ 25.) In May 2017, the immigration court sustained the charges, and ordered Petitioner removed to Laos. (*Id.* at ¶ 26.) He did not contest removability or apply for relief. (*Id.*) ICE then wrote to the Consul General of Laos seeking travel documents or a passport for Petitioner. (*Id.* at ¶ 27.) The Embassy of the Lao People's Democratic Republic responded they "will only accept Lao citizens for removal if they have a valid and proper document issued by Laos identifying that the individual is a Lao citizen." (*Id.*) Because Petitioner does not have such a document, he "is not recognized by Lao authorities as a Laos citizen or national." (*Id.*; *see* also ¶ 42 ("Laos does not consider refugees, like Petitioner, to be citizens or nationals of Laos"; individuals who have lived outside the country longer than seven years "are treated as stateless upon arrival.").

In June 2017, Petitioner was released on an Order of Supervision because ICE was unable to secure a travel document or remove him to Laos. (*Id.* at ¶ 28.) Petitioner has complied with all his ICE reporting requirements and has had no criminal arrests since his 2017 release. (*Id.*) Petitioner has a U.S. Citizen partner and he has lived with her, her three children, and her parents for the past nine years. (*Id.* at ¶ 30.) Petitioner and his partner also have a 5-year-old U.S. citizen son who has autism and attends therapy four times a week. (*Id.* at ¶ 31.) Petitioner is the primary breadwinner for his family and works as a certified glazier with trade union, IUPAT Local 1621. (*Id.* at ¶ 32.) Petitioner also cares for his elderly disabled U.S. citizen mother. (*Id.* at ¶ 57.)

In March 2026, the Santa Clara County Superior Court granted Petitioner's motion to vacate his 2002 conviction as legally invalid because Petitioner did not "knowingly, intelligently, and voluntarily make the decision to go to trial, in violation of the Due Process Clause in the Fifth

and Fourteenth Amendments of the United States Constitution." (*Id.* at ¶ 52.) In May 2026, Petitioner filed a motion to reopen with the Immigration Court based on the vacatur of the predicate criminal conviction. (*Id.* at ¶ 53.) The motion to reopen remains pending. (*Id.*)

Three weeks after he filed his motion, Petitioner attended his annual ICE check-in appointment and was given a visa application form from the Lao People's Democratic Republic, and told to return with the completed form on June 25. (*Id.* at ¶ 33.) Petitioner did so and his counsel "attempted to file a Form I-246, Application for Stay of Deportation or Removal for Petitioner with the ICE officer," but the ICE officer "told counsel that **ICE was rejecting the stay application because removal was not imminent**." (*Id.* at ¶ 33 (emphasis in original).) Petitioner was told to return a month later, which he did and was then given a September 3, 2026 return date. (*Id.*)

At his September 3, 2026 ICE appointment, Petitioner was "abruptly re-detained" because Laos had issued a travel document, but ICE refused to show the travel document to Petitioner or his counsel. (*Id.* at ¶ 34.)

> Furthermore, ICE did not properly conduct an informal interview as required under the regulations. ICE simply showed Petitioner the blank informal interview form. When Counsel asked when was the interview conducted, ICE stated that Petitioner or Counsel could fill out the blank space on the form to provide a statement. Counsel objected that any informal interview had been conducted, and wrote on the form as such. Sun Decl. at Ex. N. Petitioner was not provided with an opportunity to meaningfully respond to the allegations underlying the notice of revocation because he was never shown the purported travel document. After he was re-detained, and after ICE required Counsel to leave, ICE served Petitioner with a Warrant of Removal/Deportation, which was signed by Assistant Field Office Director Lisa M. Bolanos.

(*Id.*)

This Petition was filed later the same day. (Dkt. No. 1.) The Petition was accompanied by a TRO application. (Dkt. No. 5.) The Court ordered Respondents to file a response and gave Petitioner the opportunity to file a reply. (Dkt. No. 8.) Upon completion of the briefing, the Court granted the TRO, ordered Petitioner's release and ordered that he could not be re-detained without notice and a pre-deprivation hearing before a neutral decisionmaker, and ordered Respondents to show cause as to why a preliminary injunction should not issue. (Dkt. No. 16 at 8.) The following

day, the Court issued an Order directing Respondents to (1) provide an update as to the status of Petitioner's motion to reopen and motion for stay of removal; (2) address why Petitioner's I-213 included information about someone with a different surname and listed the incorrect basis for his administrative charge of removability; and (3) identify when Petitioner's informal interview occurred. (Dkt. No. 18.) The parties thereafter submitted their supplemental briefs. (Dkt. Nos. 19, 22.)

**LEGAL STANDARD**

"A plaintiff seeking a preliminary injunction must establish that [1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008) (citation omitted). "[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor and the other two *Winter* factors are satisfied.'" *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (citing *Shell Offshore, Inc. v. Greenpeace, Inc*., 709 F.3d 1281, 1291 (9th Cir. 2013)). The final two factors in this analysis "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

**DISCUSSION**

Petitioner brings three legal claims: (1) his re-detention without notice violates 8 C.F.R. §§ 241.4(l) and 241.13(i); (2) his re-detention violates his procedural and substantive due process rights under the Fifth Amendment; and (3) his detention violates 8 U.S.C. § 1231(a) and the Fifth Amendment Due Process clause because his removal is not reasonably foreseeable. Petitioner's briefing focuses on the first and second grounds and so the Court only addresses those. As Petitioner notes, Respondents' response to the Order to Show Cause is largely a copy of their response to the TRO. Respondents make the nearly verbatim jurisdictional argument and arguments on the merits of Petitioners' claims the Court previously rejected.[2] (*Compare* Dkt. No.

[2] The only substantively new portion in Respondents' brief is a section responding to the Court's Order that the parties address how Petitioner's stateless status impacts the Court's analysis. (Dkt.

10 at 9-28 *with* Dkt. No. 19 at 10-26.) The Court finds these arguments unpersuasive for the reasons previously stated and elaborates below. *See Prasomsy v. Albarran*, No. 3:26-CV-09534-JSC, 2026 WL 2653813, at *3-5 (N.D. Cal. Sept. 8, 2026).

**A. Likelihood of Success/Serious Legal Questions**

**1. Failure to Comply with Regulations and Protected Liberty Interest**

"Freedom from imprisonment ... lies at the heart of the liberty" that the Fifth Amendment's Due Process Clause protects. *Zadvydas v. Davis,* 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693; *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'The Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings.") (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

Petitioner has demonstrated serious legal questions as to the merits of his claims that the government failed to comply with its own regulations for revocation of his order of his release and thus violated his procedural due process rights. "Government agencies, including ICE, must follow their own regulations." *Sipaseuth v. Becerra*, No. 26-CV-07942-BLF, 2026 WL 2521847, at *4 (N.D. Cal. Aug. 26, 2026); *see also Saeteun v. Albarran*, No. 26-CV-04743-CRB, 2026 WL 1454304, at *4 (N.D. Cal. May 22, 2026) ("[W]here ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." (citation omitted)). While "[t]he Government has significant discretion to enforce the immigration laws and, indeed, to revoke an Order of Supervision" "it must do so consistent with the requirements of its own regulations and the Due Process Clause." *Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *7 (E.D. Cal. Sept. 5, 2025) (cleaned up).

Under 8 C.F.R. § 241.4(l)(2), a noncitizen such as Petitioner who is subject to a final removal may have their release revoked "to enforce a removal order or to commence removal

---

No. 19 at 12-13.)

proceedings against" a noncitizen. 8 C.F.R. § 241.4(l)(2)(iii). "Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his [] parole" and "afforded an initial informal interview promptly after his [] return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1) Thus, as relevant here, Respondents must provide 1) notice of the reasons for the revocation, and 2) a prompt informal interview to allow the noncitizen to address the reasons for the revocation.

While the record contains evidence of the Notice of Revocation which states Petitioner's release is being revoked "to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal" (Dkt. No. 11-7), the record does not contain information about when—or if—Petitioner was provided an informal interview to address the reasons for the revocation. The Court thus specifically requested Respondents address this issue. (Dkt. No. 18 at 2.) Respondents did not. Instead, Deportation Officer Carrasco submitted a declaration which states he "had given Petitioner a chance to make a statement and both he and his attorney were given copies of all forms served." (Dkt. No. 21 at ¶ 9.) But this is inconsistent with the I-213 and the Notice of Revocation. The I-213 represents Petitioner was served with the notice after he was placed in handcuffs and escorted to the holding facility (that is, after his attorney had left) and *then* "[a]n informal interview was conducted." (Dkt. No. 11-6 at 3.) The proof of service on the Notice of Revocation states it was served at 4:20 p.m. and does not indicate a copy was provided to Petitioner's counsel. (Dkt. No. 11-7 at 3.) This written evidence is consistent with Petitioner's statement that counsel was asked to leave after he was re-detained and at 1:02 pm when Deportation Officer Carrasco called counsel, Petitioner still had not been provided the Notice of Revocation. (Dkt. No. 1 at ¶¶ 34-35.) Although Assistant Field Office Director Liza Bolanos checked the box on the Notice of Revocation stating Petitioner will "be afforded an informal interview at which you will be given an opportunity to respond to the reasons for this revocation. You may submit any evidence or information you wish to be reviewed in support of your release" (Dkt. No. 11-7 at 3), Respondents have offered no evidence of any such informal interview.

To the extent Respondents contend Deportation Officer Carrasco's pre-detention exchange with Petitioner and his counsel was the interview, this exchange fails to comply with the

United States District Court
Northern District of California

regulations. Even if Officer Carrasco had advised Petitioner his release was being revoked because they had obtained travel documents, he refused to show Petitioner the travel documents. (Dkt. No. 21, Carrasco Decl. at ¶ 10 ("I informed Petitioner's attorney that she could not have a copy of Petitioner's TD due to how the TD was obtained.").) Officer Carrasco did not interview Petitioner; instead, he handed Petitioner a blank "Alien Interview Form" and told Petitioner's counsel "[T]here is nothing to ask, your clients' case is closed and you have exhausted all legal options at this point of the case." (*Id.* at ¶ 7.) Petitioner's counsel thus disputed an informal interview had been conducted and wrote that on the form. (Dkt. No. 15, Sun Decl. at ¶ 11 ("The officer responded that we could write down any response, and there is nothing to interview about because the case was closed. I was shocked that the officer was refusing to ask questions to conduct an interview. I stated I disputed that an initial informal interview was being conducted."); Dkt. No. 1-1 at 113 (counsel's handwritten note disputing an interview was conducted.) This exchange does not satisfy the requirement Petitioner be given notice and an opportunity to respond. "ICE cannot notify a noncitizen of the reasons for revocation only moments before conducting the informal interview, and logically so, because this compressed sequence would not afford the noncitizen a meaningful 'opportunity to respond to the reasons for revocation stated in the notification,' as required by the regulations." *Sipaseuth*, 2026 WL 2521847, at *5 (quoting 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3)).

Petitioner has also raised serious legal questions as to whether Respondents violated the regulation requiring the revocation be done by either an "Executive Associate Commissioner" or "district director," *see* 8 C.F.R. § 241.4(l)(2), because it is undisputed Assistant Field Office Director (AFOD) Bolanos revoked Petitioner's release. (Dkt. No. 11-7.) Respondents insist the Acting Executive Associate Director delegated revocation authority to AFODs and proffer the "ERO Delegation Order," but the ERO Delegation Order invokes the "Ice Delegation Order No. 0001" as the source of the delegation authority, which is not attached and Petitioner's counsel has been unable to locate a copy. (Dkt. No. 21-1; Dkt. No. 22 at 12.) Further, regardless of any delegation, the regulation requires if the district director is acting instead of the Executive Associate Commissioner to authorize the revocation, it can only be where "revocation is in the

public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." 8 C.F.R. § 241.4(*l*)(2); *see also Lopez v. Mullin*, 2026 WL 2532313, at *4 (E.D. Va. Aug. 25, 2026) (concluding "the regulation requires a contemporaneous determination that revocation served the public interest and that 'circumstances did not reasonably permit referral ... to the Executive Associate Commissioner.'") (quoting 8 C.F.R. § 241.4(*l*)(2)). As the Court previously noted, "several federal courts ... have held that a failure to adhere to the requirement that an Executive Associate Director or a Field Office Director make the determination to revoke release in compliance with 8 C.F.R. § 241.4 violates due process and thus mandates release" *See Tanashyan v. Mullin*, No. 5:26-CV-04455-SP, 2026 WL 2538250, at *5 (C.D. Cal. Aug. 27, 2026) (cleaned up) (collecting cases). The Court finds the reasoning of these cases persuasive and concludes Petitioner has raised a serious legal issue regarding whether AFOD Bolanos had authority to revoke his release.

In sum, Petitioner has a substantial liberty interest in remaining free on release as he has been for the past nearly 10 years and in the government complying with its own regulations for revoking his release before depriving him of this liberty interest. *See Zhu v. Genalo*, 798 F. Supp. 3d 400, 408 (S.D.N.Y. 2025) ("challenges [to] ICE's revocation of [petitioner's] release and detention without providing the required notice and an opportunity to be heard" "implicate the Due Process Clause." (citing *Zadvydas*, 533 U.S. at 690); *see also Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others.")

**2. *Matthews* Factors**

To determine what procedures are constitutionally sufficient to protect Petitioner's liberty interest, the Court applies the three-part test established in *Matthews v. Eldridge*: (1) the private interest affected; (2) the risk of an erroneous deprivation and the probable value of any additional or substitute procedural safeguards; and (3) the government's interest. 424 U.S. 319, 335 (1976). Each of these factors weighs in Petitioner's favor.

First, Petitioner has a substantial liberty interest in remaining out of custody and having

United States District Court
Northern District of California

Respondents comply with their own regulations providing notice and an opportunity to be heard prior to detention. Petitioner has lived in this country for 44 years—since he was one month old—and he has never lived in the country to which Respondents seek to deport him. He has a U.S. Citizen partner and a five-year old U.S. Citizen son with autism, and he acts as a caretaker to his partners three other U.S. Citizen children. Petitioner has been released on an order of supervision for nine years, fully complied with the conditions, and works as a journeyman glazier as a member of the IUPAT Local 1621 union. Under these circumstances, Petitioner has a significant liberty interest in remaining free from detention that must be protected by adequate procedural safeguards. *See Morrissey*, 408 U.S. at 481–82 ("The parolee has relied on at least an implicit promise that parole will be revoked only if [she] fails to live up to the parole conditions. ... [T]he liberty [of a parolee] is valuable" and "[i]ts termination calls for some orderly process, however informal."); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does Ortega have a liberty interest in remaining out of custody on bond."); *Alva v. Kaiser*, No. 25-cv-06676-RFL, 2025 WL 2419262, at *1, 3–4 (N.D. Cal. Aug. 21, 2025) (granting preliminary injunction to noncitizen who was subject to a final order of removal but had been released on an Order of Supervision).

Second, Respondents' own actions in failing to comply with the regulations governing Petitioner's detention show the risk of erroneous deprivation is high. Further, the errors on Petitioner's I-213 and inconsistences in the chronology of events as recounted in the documents and Respondents' declarations raise serious concerns.[3] Mistakes on his I-213 charging him with the incorrect predicate offence and referring to him by the wrong name are not "ministerial" or typographical errors—they are indicative of a process which has been employed without adequate care for Petitioner's constitutional rights. (Dkt. No. 20, Supp. Perez Decl. at ¶ 5 (describing "accidental[]" errors in completing the I-213 as "purely a ministerial task and had no bearing on ERO's enforcement action").) "[T]he mere fact that the government has the authority

[3] Petitioner's reply emphasizes several other inconsistencies in the I-213. (Dkt. No. 22 at 7-8.)

to detain someone does not mean that it may do so in any manner it chooses, without affording due process." *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 157 (W.D.N.Y. 2025).

Finally, Respondents have not articulated any legitimate interest in support of detaining Petitioner without complying with its own regulations, *see* 8 C.F.R. § 241.4(l), and providing him notice and an opportunity to address the basis for the revocation. Although Respondents have presented evidence that the travel document to Laos is only valid for 90-days, the record contains no evidence regarding the burden the government would face to obtain a new travel document. (Dkt No. 11-5.) *Sipaseuth*, 2026 WL 2521847, at *8 (granting preliminary injunction and concluding the government had not demonstrated any burden on the government in obtaining a new travel document).

In sum, each of the *Matthews* factors favor Petitioner so he has demonstrated, at a minimum, serious legal questions regarding Respondents' failure to comply with its own regulations and the merits of his due process claim.

**B. Irreparable Harm**

Petitioner has met his burden of showing he is likely to suffer irreparable harm in the absence of preliminary injunctive relief. Petitioner has PTSD and detention has severe negative impacts on his mental health as well as his U.S. Citizen family members. (Dkt. No. 1 at ¶ 29; Dkt. No. 1-1, Exs. G, H.) Petitioner's stateless status also weighs in favor of a finding of irreparable harm. Respondents have not responded to Petitioner's argument that he is not in fact a native and citizen of Laos and even if he were, because he has resided in the United States for the last seven years, he has forfeited any Lao nationality. (Dkt. No. 1 at ¶ 64; Dkt. No. 1-1 at 13.) And, Petitioner has offered evidence Laos treats deportees as stateless and upon their arrival imprisons them in a military detention facilities where they will stay unless they have a Laotian sponsor or guarantor, which Petitioner does not since he does not know anyone in Laos. (Dkt. No. 1 at ¶ 6; Dkt. No. 1-1 at 78-80.) Further, Petitioner has a pending motion to reopen based on the vacatur of the conviction underlying his removal order and if the motion is granted he will no longer have a removal order and his LPR status will be restored. (Dkt. No. 1 at ¶¶ 52-53.) Finally, the "[d]eprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*,

882 F.3d 763, 767 (9th Cir. 2018); *see also Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.").

### C. Balance of Hardships and the Public Interest

Lastly, the balance of the equities and the public interest, which merge in this case because the government is the opposing party, tip sharply in Petitioner's favor. Preventing the violation of constitutional rights serves the public interest. *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). Specifically, "the public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up). Respondents risk only a short delay in detaining Petitioner by complying with the required process. "Faced with a choice 'between [minimally costly procedures] and preventable human suffering,' ... the Court concludes 'that the balance of hardships tips decidedly in petitioner's favor.'" *Singh*, 803 F. Supp. 3d at 1049 (alteration in original) (quoting *Hernandez*, 872 F.3d at 996). In contrast, without the requested preliminary injunctive relief, detention poses a significant threat to Plaintiff's liberty interest and the wellbeing of his family.

## CONCLUSION

For the reasons stated above, the Court GRANTS Petitioner's request for a preliminary injunction. Respondents and their officers, agents, employees, and all persons acting in concert or participation with them are ENJOINED AND RESTRAINED from re-detaining Petitioner unless and until Respondents follow all procedures set forth in 8 C.F.R. §§ 241.4(l), 241.13(i), and any other applicable statutory and regulatory procedures prior to re-detention. If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice.

This Order shall remain in effect until further order of the Court. Respondents do not request, and the Court declines to require, a security.

The parties shall meet and confer and, within 14 days of the date of this Order, propose a schedule for resolving the remainder of this case. Alternatively, the parties may stipulate that the

reasoning in this order warrants granting the Petition and entering judgment.

**IT IS SO ORDERED.**

Dated: September 18, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California